SERGIO S. PEÑA, demandante y apelante, *v.* JUAN GARCÍA CINTRÓN, demandado y apelado.

No. 5956.—*Sometido:* Abril 21, 1933. *Resuelto:* Mayo 10, 1933.

F. *Cervoni Gely,* abogado del apelante; F. *González Fagundo,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

En octubre de 1930 Sergio S. Peña presentó demanda en contra de Juan García Cintrón, en reclamación de daños y perjuicios causados al demandante, según se alega en la demanda, con motivo de desafíos, provocaciones y disparos de armas hechos por el demandado. Radicada la contestación y señalada la vista de la causa para el día 22 de julio de 1931, el demandante solicitó de la corte el traslado del pleito a otro distrito o la inhibición del juez por los siguientes fundamentos: Porque el demandante tenía fundados motivos para creer que no tendría un juicio imparcial y justo; porque el juez de dicho distrito, Hon. Rafael Arjona Siaca, y el demandante Sergio S. Peña son enemigos personales, siendo su enemistad de carácter irreconciliable, que incapacita al juez para entender en el presente pleito. Esta moción fué acompañada de una declaración jurada suscrita por el demandante, sin que se presentara testimonio alguno bajo juramento para contradecir las manifestaciones de dicho demandante.

La corte desestimó la solicitud de inhibición o traslado y el demandante interpuso el presente recurso de apelación, alegando que la corte inferior cometió el error de negar el traslado del caso a otro distrito o de acordar la inhibición del juez.

El demandante espera obtener el propósito que persigue, que es evitar que el Hon. Rafael Arjona Siaca actúe como juez en este caso, mediante un traslado del mismo o la inhibición de dicho juez. De acuerdo con el artículo 23 del Código de Enjuiciamiento Civil, un juez deberá inhibirse de actuar en un pleito o procedimiento de cualquier clase cuando fuere parte o estuviere directa o indirectamente interesado, cuando tuviere parentesco de consanguinidad o afinidad con cualquiera de las partes dentro del cuarto grado, o con el abogado de cualquiera de las partes dentro del segundo grado, y cuando el juez hubiere sido abogado o consultor de cual-

quiera de las partes en el pleito o procedimiento pendiente ante su corte, o fiscal en una investigación o proceso criminal donde los hechos sean los mismos que en el pleito sometido a su resolución.

La parcialidad o el prejuicio de parte del juez con respecto a alguno de los litigantes no aparece en el artículo anteriormente citado. Sin embargo, se advierte claramente el propósito de que el juzgador sea una persona completamente desinteresada, libre de vínculos y relaciones que puedan alterar el equilibrio ecuánime y sereno de la discreción judicial. El artículo 170 del Código de Enjuiciamiento Civil de California contiene un apartado que cubre los casos de parcialidad o prejuicio de parte del juez. Según este apartado, que no ha sido incluído en nuestro artículo 23, cuando de la declaración jurada de una de las partes aparezca que no puede obtener un juicio imparcial y justo ante cualquier juez de la corte que va a juzgar la causa, por razón de prejuicio o parcialidad de dicho juez, éste inmediatamente asegurará los servicios de cualquier otro juez del mismo condado para presidir la vista de dicha acción o procedimiento. Esta declaración jurada debe notificarse a la parte contraria o a su abogado por lo menos con un día de anticipación a la vista del caso, disponiéndose que podrán presentarse *contraaffidavits* un día después, a menos que la corte prorrogue el término por un período que no excederá de cinco días.

Ésta es la diferencia que existe entre el artículo 23 de nuestro código y el 170 del de California. El primero determina los casos en que el juez debe inhibirse, sin hacer mención de las palabras ''parcialidad y prejuicio''; el segundo determina que la parcialidad o el prejuicio obligan al juez a abstenerse de actuar. A pesar de la omisión que se advierte en el artículo 23, no están las partes en Puerto Rico huérfanas de protección contra la parcialidad o prejuicio de un juez. El artículo 83 de nuestro Código de Enjuiciamiento Civil, equivalente al 397 del de California, dispone que:

"La corte podrá, previa moción, cambiar el lugar del juicio, en los siguientes casos:

"    *        *        *        *        ●        ●        ●

"2. Cuando hubiere motivo para creer que un juicio imparcial no puede celebrarse allí.

"    *        *        *        *        *        *        *

"4. Cuando por cualquier motivo el juez estuviere incapacitado para entender en el asunto."

Arguye el demandado que el apartado que autoriza el traslado cuando hubiere motivo para creer que no puede obtenerse un juicio imparcial se refiere a juicios por jurado, y no tiene aplicación en Puerto Rico, porque aquí no hay jurado en casos civiles. Convenimos en que esta disposición tiende a evitar, en los estados de la Unión donde está en vigor, la selección de un jurado en el seno de una comunidad prevenida contra una de las partes, cuando hubiese motivos para creer que no puede asegurarse la celebración de un juicio imparcial, libre de prejuicios y animosidad.

La Corte Suprema de Oklahoma, en el caso de *Dean* v. *Stone*, 35 Pac. 579, se expresó así:

"El apelante negó en términos generales la demanda, y, antes del juicio, radicó su moción y *affidavit* para el traslado del caso, alegando que el demandante ejerce una influencia indebida sobre los ciudadanos del condado de Oklahoma y que existen sentimientos de odio contra la defensa del apelante, motivados por un prejuicio local. La corte inferior desestimó la moción de traslado y se alega que al hacerlo cometió error. El abogado del apelante cita un número de decisiones de Indiana que establecen la doctrina de que cuando un *affidavit* para un traslado se radica en un caso civil determinando las razones en que se basa, la corte está obligada a ordenar el traslado, incurriendo en error si no lo hace. Hemos examinado estas decisiones y vemos que se basan en la teoría de que la parte que solicita el traslado tiene derecho a un juicio por jurado y a ser juzgado por un jurado imparcial que no sea influído por prejuicio local o sentimientos de odio contra la defensa; pero cuando el caso es juzgado por la corte, no hay razón para esta regla, y cuando la razón cesa, la regla no debe aplicarse: Jamás se intentó que se concediese un cambio de juez basado en el prejuicio local de los ciudadanos de una comunidad, porque estas cosas no afectan ni influyen a las cortes. Son única-

mente los jurados sin experiencia los que vienen a ser impresionados por las influencias locales y quizá inadvertidamente permiten que tales cosas obren en detrimento de su juicio. No es éste un caso en que se garantiza al demandado un jurado como cuestión de derecho, y el estatuto en este caso no dispone un juicio por jurado.''

Por analogía puede citarse también el caso de *Edmunds* v. *Duff*, 124 Atl. 489, resuelto por la Corte Suprema de Pennsyl·vania, donde se decide que un estatuto autorizando el traslado del pleito, cuando un crecido número de habitantes del condado tiene interés adverso a la parte que solicita el traslado y se demuestra ante la corte que no puede obtenerse un juicio justo e imparcial, no se aplica a casos de equidad donde es la corte la que oye el testimonio y tiene el deber de apreciar los hechos.

De acuerdo con esta jurisprudencia, en los casos que han de verse ante un jurado, la parcialidad o prejuicio de los habitantes del distrito donde la acción se ejercita, contra una de las partes, es motivo de traslado cuando no puede obtenerse un juicio justo e imparcial; si el juicio ha de celebrarse ante un juez, la parcialidad o prejuicio no constituye fundamento para trasladar el pleito. Esta distinción que se establece entre jueces y jurados no deja de tener su explicación. Para el prejuicio y la parcialidad de un juez se ofrecen dos soluciones: la inhibición y el traslado; para el prejuicio general la única solución es el traslado, ya que el distrito es siempre el mismo y es de su seno que surgen los jurados. Cuando la comunidad o una parte importante de ella se siente poseída de un sentimiento de prejuicio general, no es humano esperar que todos los jurados que surgen del seno de esa comunidad puedan sustraerse a las influencias del medio ambiente. No es probable, aunque sí posible, que estas influencias alcancen también al juez, pero en este caso habría que individualizar la alegación, dirigiéndola contra dicho funcionario, ya que no cabe comprenderla dentro de una alegación de prejuicio general. No están exentos los jueces de prejuicios y pasiones. La naturaleza humana no ha llegado

a un grado tal de perfección que justifique que en ella se deposite una confianza ilimitada. De ahí las leyes que protegen a las partes en un litigio contra la parcialidad y prejuicio de un juez.

La Legislatura Insular, sabiendo que en Puerto Rico no hay juicios por jurado en casos civiles, aprobó el apartado segundo del artículo 83 de la ley procesal. Esta disposición, que se aplica generalmente en los estados de la Unión a la parcialidad o prejuicio de los habitantes de un distrito con derecho a ejercer las funciones de jurados, tiene necesariamente que aplicarse en Puerto Rico a la parcialidad y prejuicio de las personas que han de actuar como jueces, porque aquí no hay juicios por jurado en casos civiles. Cuando se incorporó esta disposición en nuestro código, fué indudablemente con el propósito de que pudiese de algún modo hacerse efectiva. No cabe pensar que el legislador aprobara viciosamente un precepto que, si se descarta a los jueces, no tendría prácticamente aplicación.

Al artículo que venimos comentando tiene sus equivalentes en los códigos de California, Idaho y Montana. Lo mismo ocurre con el artículo 23 en la forma en que fué originalmente aprobado. Las cortes de California y Montana resolvieron que de acuerdo con la legislación entonces en vigor el prejuicio y la parcialidad no incapacitaban al juez para actuar en un caso determinado. La Corte Suprema de Montana, en el caso *In re Davis Estate* (Mont.) 27 Pac. 346, resolvió que el estatuto en dicho estado no autorizaba específicamente el traslado del pleito por razones de prejuicio o parcialidad de parte del juez. Después de esta decisión se hizo sentir en Montana la necesidad de legislar sobre la materia; y en efecto se legisló en el sentido de autorizar el traslado del pleito por razones de parcialidad o prejuicio del juez. Lo mismo ocurrió en California, donde en vista del criterio sostenido por la Corte Suprema de dicho estado, se adoptó la disposición que hoy forma parte del artículo 170 del Código de Enjuiciamiento Civil anteriormente citado.

50

Refiriéndose a la opinión emitida por la corte de Montana en el caso In re Davis Estate, supra, dice la Corte Suprema de Idaho en el caso de *Day* v. *Day,* 86 Pac. 532:

"El criterio mantenido por la corte de Montana de que no podía decretarse el traslado por razones de prejuicio o parcialidad fué causa de que la misma corte usara el siguiente justo y vigoroso lenguaje al decidir el celebrado caso de Finlen v. Heinze, 73 Pac. 123: 'Ninguna sentencia de una corte de justicia tan viciada de corrupción como revelan los autos en este caso debe prevalecer, y su cancelación en estos momentos pondrá de relieve la determinación de esta corte de utilizar hasta donde sea posible su autoridad legal y constitucional, con el fin de que la confianza pública en nuestro sistema judicial no pueda ser quebrantada y que la fuente de la justicia se conserve pura.' Los autores de nuestra Constitución protegieron con cuidado especial nuestro sistema judicial y trataron de colocarlo sobre toda sospecha de deshonestidad, parcialidad o prejuicio, de modo que la confianza pública no fuese quebrantada, y dispusieron que la justicia debía ser administrada sin prejuicio. En muchos de los casos citados las cortes han lamentado claramente que el prejuicio y la parcialidad de un juez no fueran declarados por el estatuto motivo de un traslado, y desaprobaron en lenguaje vigoroso el argumento de que un juez desviado por parcialidad y prejuicio personal era impotente para perjudicar a su enemigo o prestar ayuda a su amigo, por el hecho de que cualquier error que cometiese podía ser corregido en apelación. En In re Davis Estate, supra, la corte dijo: 'Nosotros desaprobamos toda sugestión y alegación de que un juez influído por parcialidad y prejuicio es impontente para perjudicar a su enemigo o prestar ayuda a su amigo, por el hecho de que sus errores pueden ser corregidos en apelación por un tribunal superior. Existen presunciones en favor de sus resoluciones que no pueden ser ignoradas y él puede dictar órdenes que no pueden ser alteradas a menos que haya habido un abuso craso de su discreción.' Y copia en esta decisión, de Williams ✓. Robinson, 6 Cush. (Mass.) 333, lo que sigue: 'La parcialidad o el prejuicio consciente en favor de una de las partes o contra la otra, causado por oír una manifestación ex parte de los hechos del caso, constituye inhabilidad o incapacidad para juzgar el caso dentro del justo significado de los estatutos. . . No fué necesario que el estatuto enumerara todos los motivos de incapacidad. Las reglas del derecho común y los principios de la justicia natural deben aplicarse en la interpretación de estos estatutos.'

"Aunque la historia judicial de California y Montana demuestra

que el prejuicio y la parcialidad de un juez no constituyeron en el pasado base para un traslado, sin embargo se reconoce hoy por dichos estados que debió existir este fundamento, y que el mismo conduce a una honrada y propia administración de la justicia.''

En este caso de *Day* v. *Day,* supra, resuelto por la Corte Suprema de Idaho, se solicitó el traslado del juicio basado en el perjuicio y la parcialidad del juez. El artículo 83 de nuestro código equivale al 4125 del Código de Enjuiciamiento Civil de Idaho y el 23 al artículo 3900 de los estatutos revisados de dicho estado, 1877. Interpretando estas disposiciones en armonía con un precepto de la constitución del estado, dice la corte:

"Dicha sección 18 del artículo primero de la Constitución dispone que el derecho y la justicia se administrarán sin venalidad, negación, dilación o prejuicio. Las cortes administran justicia en este estado, y si aparece que el juez tiene prejuicio contra alguna de las partes, no es de suponerse que pueda administrar justicia. Bajo las disposiciones del artículo 4125 del Código de Enjuiciamiento Civil (83 de nuestro código) el juez puede, en virtud de moción, cambiar el lugar del juicio cuando por cualquier causa esté incapacitado para actuar, y tal disposición de la Constitución incapacita a un juez cuando tiene prejuicios en el caso, porque no puede mantenerse que un juez que tiene prejuicio o parcialidad en un caso ante él pueda administrar justicia sin perjuicio. Descartando las mencionadas disposiciones de la Constitución, los principios ordinarios del derecho y la justicia prohiben a un juez y lo incapacitan para juzgar un caso en el cual tiene prejuicio en favor o en contra de una de las partes. Esta disposición de la Constitución no puede ser ignorada diciendo que es una simple máxima de la ley y que no significa nada. Este principio es una de las piedras fundamentales de nuestro sistema judicial y de la jurisprudencia y no puede ser removido sin socavar por completo el sistema.''

En el caso de *Illinois Western Electric Co.* v. *Town of Cicero,* 118 N.E. 733, la corte se expresó así:

"Es hoy un principio de derecho universalmente reconocido que ninguna persona debe sentarse como juez en su propio caso o en un caso en que esté materialmente interesada, o en que la parcialidad o el prejuicio sea motivo de incapacidad para que un juez actúe en

52

una causa. Aun en aquellos estados en que el prejuicio no constituye un motivo de incapacidad, cuando se formula el cargo y los hechos alegados indican la existencia de prejuicio, la corte cuidadosamente examinará los autos para asegurarse de que no se ha cometido ninguna injusticia. 23 Cyc. 583. Los estatutos de este carácter tienen el propósito de otorgar a cada litigante un juicio imparcial y justo ante un juez desinteresado. El espíritu de nuestras leyes demanda que cada caso sea justa e imparcialmente juzgado, y ningún juez debe pensar en presidir en la vista de un caso en el cual su buena fe está tan seriamente cuestionada como lo demuestran los autos en este caso."

Es importante tener en cuenta que el inciso cuarto del artículo 83 autoriza el traslado cuando por cualquier motivo el juez estuviese incapacitado para actuar en el sunto. A nuestro juicio el prejuicio y la parcialidad incapacitan al juez para ejercer la delicada función de juzgador. La corte de Idaho vigoriza y fundamenta su opinión en *Day* v. *Day,* supra, interpretando un precepto constitucional, según el cual la justicia debe administrarse sin prejuicio, y añade:

"Descartando las mencionadas disposiciones de la Constitución, los principios ordinarios del derecho y la justicia prohiben a un juez y lo incapacitan para juzgar un caso en el cual tiene prejuicio en favor o en contra de una de las partes."

Nosotros, que no tenemos un precepto constitucional que requiera expresamente que la justicia se administre sin prejuicio, sostenemos que es éste un principio tan necesario para la administración de justicia, que no puede prescindirse de él sin menoscabo de la propia justicia que los tribunales tienen el deber ineludible de proteger. El apartado segundo del artículo 83 no respondería a ningún fin práctico, si no se aplicase a los jueces. Este apartado debe interpretarse en relación con el apartado cuarto, que autoriza el traslado cuando el juez estuviese incapacitado por cualquier motivo para entender en el asunto.

Examinemos ahora las razones que aduce el demandante para solicitar el traslado del caso. Estas razones aparecen descritas en la moción jurada que autoriza el propio

demandante. Además se acompaña una declaración jurada ante el Secretario de la Corte de Distrito de Humacao que dice así:

". . . Que la vista de este juicio está señalada para el día 22 de este mes y el declarante no cuenta con más testigos para probar su causa de acción que los testigos que declararon en el caso criminal por PORTAR ARMAS contra Juan' García Cintrón, el demandado, cuyos testigos fueron las únicas personas que presenciaron los hechos ocurridos en la noche del 25 de julio de 1929, cuyos hechos dieron lugar a la causa de acción del demandante en este procedimiento; y como el Sr. Juez de esta Corte, Lcdo. Rafael Arjona Siaca, fué el Juez que absolvió al acusado en el caso de PORTAR ARMAS, Juan García Cintrón, es indudable que la causa de acción en el presente procedimiento fracasaría completamente no habiendo más testigos que los que declararon en el caso criminal contra Juan García Cintrón por PORTAR ARMAS.

". . . que el Lcdo. Rafael Arjona Siaca, Juez de la Corte de Distrito de Humacao y el declarante son enemigos personales por razones de público conocimiento, a saber:

"(a) El declarante formuló personalmente cargos contra el Lcdo. Arjona Siaca, ante el Departamento de Justicia, para impedir que el Lcdo. Arjona Siaca fuese recomendado al Senado de P. R. para Juez de Distrito de Humacao. Como la naturaleza de dichos cargos afectaba directamente al prestigio personal del Lcdo. Arjona Siaca, ellos constituyen el primer motivo de la alegada enemistad personal.

"(b) El declarante publicó e hizo circular por Humacao y la isla de Puerto Rico una hoja suelta atacando la integridad personal del Lcdo. Arjona Siaca, lo que, indudablemente, constituye también motivo de enemistad personal.

"(c) El Lcdo. Arjona Siaca presentó querella ante la Corte Municipal de Humacao contra el declarante, Sergio S. Peña, el día 18 de junio próximo pasado, en la cual solicitaba el que se pusiera bajo caución juratoria al declarante, bajo la alegación de que el declarante lo había amenazado de muerte aquella noche; como resultado de dicha querella el declarante fué declarado culpable por la Corte Municipal y condenado a seis meses de cárcel si no prestaba fianza por $800.

"(d) El declarante fué denunciado en la Corte de Distrito de Humacao por el delito de portar armas el día 19 de junio pasado, de cuyo procedimiento se inhibió el Juez Sr. Arjona Siaca, pero a pesar de haberse inhibido entendió en el señalamiento del caso de-

mostrando prejuicio y animosidad en contra del declarante, pues **a** pesar de ser reciente la imputación del hecho denunciado, el Juez Sr. Arjona, festinadamente, señaló el caso para ser celebrado cuatro días después de presentarse y leérsele la acusación al declarante, haciendo de este señalamiento un caso excepcional toda vez que en la Secretaría y en la Fiscalía de esta Corte existen sendos procesos por *felonies* y *misdemeanors* sin celebrar y sin que se haya demostrado empeño en celebrarse.''

El primer fundamento aducido por el demandante no debe ser tomado en consideración. El hecho de que el Sr. Rafael Arjona Siaca fuese el juez que absolvió al demandado Juan García Cintrón por el delito de portar armas no lo incapacita para actuar como juez en la acción civil promovida por el Sr. Peña. En cuanto a los demás fundamentos, entendemos que deben ser cuidadosamente examinados, ya que no han sido contradichos, para ver si los mismos son suficientes para autorizar la concesión del traslado que se solicita. Se alega que el demandante y el juez son enemigos irreconciliables, que el primero formuló cargos contra el segundo para evitar que fuese confirmado por el Senado, que además publicó e hizo circular una hoja suelta atacando la integridad personal del juez, y que éste presentó querella ante la Corte Municipal de Humacao contra Sergio S. Peña, para que se le pusiese bajo caución, alegando que el mismo le había amenazado de muerte. El demandante confiesa ser enemigo personal del juez y alega que éste ha demostrado prejuicio y animosidad contra él.

En el caso de *Bassford* v. *Earl,* 121 Pac. 396, resuelto por la Corte Suprema de California, se solicitó la inhibición del juez de acuerdo con el último apartado del artículo 170 del Código de Enjuiciamiento Civil de California. Aunque en este caso se trata de inhibición y no de traslado, ilustramos esta opinión con dicha cita porque el principio envuelto es el mismo: parcialidad y prejuicio de parte del juez. Alegó en dicho caso el demandante que el juez era candidato para ser nominado para un cargo judicial en una convención republicana, que el demandante era un delegado a la conven-

ción, que el juez solicitó su apoyo y que el demandante y otros miembros de la delegación del condado se negaron a acceder y que en virtud de esta actitud el juez no obtuvo la nominación, viéndose obligado a retirarse a la vida privada; que más tarde el juez procuró ser nominado para el cargo de juez de la Corte Superior del condado de Solano y solicitó nuevamente su apoyo, que el demandante negó, contribuyendo de este modo a la derrota del juez; por último alegó que no podía obtener un juicio imparcial y justo por razón del prejuicio y la parcialidad de dicho juez contra él. Sobre estos hechos, que constituyen la base fundamental de la moción de traslado, la corte de California se expresó en los siguientes términos:

"Pero, fuera de estas consideraciones, es claro que el demandante tenía un sentimiento de hostilidad hacia el juez, cuyos fundamentos, conforme se dice más arriba, son aparentes. Se ha demostrado que éste se hallaba en posición de obstaculizar las aspiraciones judiciales del juez, negó la petición héchale por el juez para que le endosara, y coadyuvó en destruir sus aspiraciones, teniendo ello por resultado que el juez fracasara dos veces en su nominación y fuese relegado a la vida privada. Todo esto constituye una demostración prima facie suficiente para que el juez tuviera cierta animosidad, y no puede decirse que carezca de significación el hecho de que no hubiera tal demostración de animosidad. Pues en respuesta a la solicitud y a la declaración jurada del demandante, la única prueba está contenida en la declaración jurada del Sr. Charles S. Wheeler, uno de los letrados de los demandados, quien alegando primeramente falta de suficiente información y creencia que permitiera al deponente hacer cualquier aseveración relativa a la conducta del demandante y del juez con referencia a las nominaciones judiciales, continúa en la siguiente forma: 'Que el deponente, sin embargo, declara y dice, por información y creencia, que si tuvieron lugar los hechos relacionados con la candidatura del aludido Hon. A. J. Buckles para los cargos arriba nombrados y con las conversaciones, súplicas y actuaciones de dicho H. A. Bassford para con dicho juez o hacia él, mencionadas en la declaración jurada del ameritado H. A. Bassford, no obstante los mismos en forma alguna redundarán en perjuicio de H. A. Bassford ni producirán los mismos pasión o prejuicio en el juez A. J. Buckles, ni lo incapacitarán en forma alguna para que

conozca de los procedimientos en esta causa, y el declarante hace constar, por información y creencia, que el ameritado H. A. Bassford puede gozar de un juicio justo e imparcial en todos los procedimientos en este litigio ante el Hon. A J. Buckles y que dicho Hon. A. J. Buckles no está incapacitado para actuar en esta causa por razón de prejuicio o pasión contra el citado Bassford o por alguna otra causa de la índole que fuere.' Según la naturaleza de las cosas es imposible para un deponente que ocupe la posición del Sr. Wheeler declarar que estos hechos 'en forma alguna redundarán en perjuicio de H. A. Bassford ni producirán los mismos pasión o prejuicio en el Juez A. J. Buckles.' Si tales manifestaciones eran necesarias en respuesta a la declaración jurada de Bassford, y no solamente creemos que lo eran sino que de la declaración jurada del Sr. Wheeler parecen haber sido así consideradas por los querellados en dicha moción, la persona que con mente alerta podía hacer tal declaración era el mismo juez, y no lo hizo. Se desprende que con vista de la prueba presentada incumbía a la corte haber declarado con lugar la moción del apelante y por ende se revoca la resolución declarando sin lugar dicha moción.''

En el caso de *Morehouse* v. *Morehouse,* 68 Pac. 976, la Corte Suprema de California se expresó en los siguientes términos:

''Otro punto suscitado en favor del apelante es el supuesto error de la corte al declarar sin lugar la moción solicitando se designara a otro juez para que conociera del juicio, y creemos que esta contención debe igualmente ser sostenida. Los hechos alegados en la declaración jurada del demandado no son negados en las contradeclaraciones, y de conformidad con la disposición expresa del estatuto, tampoco pueden ser consideradas las manifestaciones no juradas hechas por el juez al determinar la cuestión envuelta. Código de Enjuiciamiento Civil, artículo 170, inciso 4º; People v. Compton, 123 Cal. 414, 56 Pac. 44. Por consiguiente, la resolución de la corte puede ser sostenida solamente fundada en la insuficiencia de la declaración jurada del demandado y creemos que ésta no era insuficiente. Se alega en la declaración jurada que 'con anterioridad a la fecha en que se inició el litigio el deponente y el aludido Oval Pirky, juez, etc., tuvieron una riña, disputa y controversia personal, en la cual desempeñó papel muy importante el sentimiento personal y el odio, que se convirtió y fué una lucha movida por el arrebato de cólera de ambas partes, y el deponente y dicho Oval Pirky se

separaron en forma y modo bruscos, y ese sentimiento de enemistad aún existe de parte del ameritado Oval Pirky contra el demandado y para con él; y el declarante cree, sin embargo, y asegura que los hechos son, que con motivo del sentimiento así engendrado, el antedicho juez tiene prejuicio y pasión contra el demandado y contra su caso a tal extremo que este demandado no podría tener un juicio imparcial ante el citado juez.' Podría admitirse, según sostiene el letrado del querellado, que del mero hecho de que tuviera lugar la supuesta riña, no puede concluyente o aun probablemente inferirse que el juez no podría conocer imparcialmente del caso del demandado; y nos place creer que con la mayoría de los jueces tal inferencia carecería de fundamento. Mas aquí tenemos la alegación directa de que existe prejuicio y pasión por parte del juez, y, aunque la alegación se basa—al igual que en la mayoría de los casos debe basarse—meramente en la creencia del declarante, sin embargo, ella viene acompañada de una relación de los hechos en que se funda tal creencia, tan completa como la naturaleza del caso lo admite; y esto era cuanto razonablemente podía exigirse. La corte debió en su consecuencia haber declarado con lugar la moción.''

El demandante no oculta su animosidad contra el juez. El mismo Sr. Arjona Siaca solicitó que el Sr. Peña fuese puesto bajo caución por haberle amenazado con darle muerte. En estas condiciones no parece razonable que el Sr. Arjona Siaca actúe como juez en este caso, aun cuando, como suponemos, esté dispuesto a proceder de una manera justa e imparcial. Así lo revela el Sr. Arjona en las siguientes palabras que copiamos de su resolución negando la moción de traslado:

''Y agrega el Juez que suscribe: el ejercicio que de sus derechos civiles haga el mismo personalmente en su vida ciudadana, de ninguna manera ha de intervenir con su funcionamiento oficial. Por encima de todas las dolorosas alternativas que le confronten en su vida personal, jamás permitirá que un solo átomo de prejuicio pueda perturbar la justicia de su fallo. En la balanza de su vida, ningún ataque de que se le pueda hacer objeto puede elevar el platillo del perdón absoluto y completo, que tiene en su existencia para toda perversidad y para toda irreflexión. Ni podrá tampoco obscurecer el concepto que tiene de su excepcional responsabilidad en la eminente labor de hacer justicia.''

Estas palabras nobles y elevadas enaltecen y honran al funcionario que las suscribe. Su conciencia se siente capaz de ser justa hasta con sus propios enemigos. Sin embargo, por más que su conciencia permanezca inalterable y serena, a pesar de los hechos relatados por el demandante, si estos hechos son bastantes para demostrar prima facie la procedencia y conveniencia de un cambio de juez, el traslado debe decretarse. Arguye el demandado que de la moción del demandante lo único que aparece es que el Sr. Peña es enemigo del juez de la Corte de Distrito, pero no que el juez lo sea de él, que es lo que exige el Código de Enjuiciamiento Civil. En su moción y en la declaración que la acompaña Sergio S. Peña manifiesta bajo juramento que entre él y el juez existe una enemistad personal de carácter irreconciliable y que dicho juez ha demostrado prejuicio y animosidad en contra de él, exponiendo los hechos que a su juicio demuestran este prejuicio y animosidad. No obra en autos testimonio alguno bajo juramento negando estas manifestaciones. Basta leer las alegaciones juradas del demandante para llegar a la concusión de que el juez Sr. Arjona no debe actuar en esta causa y de que debe ordenarse el traslado de la misma.

*Debe revocarse la resolución apelada y devolverse el caso a la corte inferior para procedimientos ulteriores no incompatibles con los términos de esta opinión.*

OPINIÓN CONCURRENTE DEL JUEZ ASOCIADO SR. WOLF

Si bien en este caso no he dejado de tener dudas, finalmente he convenido con la mayoría en que debe revocarse la orden apelada. Difiero muy poco del razonamiento de la opinión de la mayoría, pero mi idea es, y la jurisprudencia citada tiende a demostrar, que debe ordenarse el traslado en un caso en que bajo las circunstancias podría esperarse que surja prejuicio en el juzgador, ya sea éste un juez o un jurado. Cuando se presenta moción solicitando tal traslado, el

juez puede preguntarse a sí mismo si el foro o el público no pudieran imaginarse, según lo expresa el artículo 83 del Código de Enjuiciamiento Civil, que hay "motivo para creer que un juicio imparcial no puede celebrarse allí." El juez mismo podría estar seguro, como lo estuvo el juez Arjona Siaca, de que no habría en él predisposición alguna, y sin embargo, la consecuencia de ese hecho podría ser diferente para un juez ordinario. En otras palabras, cuando hay graves motivos para tener alguna sospecha genuina en el sentido de que no se celebrará un juicio imparcial, la cuestión para el juez no es su actitud personal sino toda la situación. Viene a ser una cuestión abstracta. Bajo las circunstancias, según han sido reseñadas en la opinión de la mayoría, en el juicio podría suceder algo que provoque hostilidad aun en el juez más desinteresado. Así, pues, según hemos indicado, de acuerdo con el código había motivos para creer que no podía celebrarse un juicio imparcial.

Uno podría hasta sugerir que si un juez se inclinara, a la inversa, a fallar a favor de una persona que se ha declarado su enemigo, tampoco habría un juicio imparcial.