JUNTA INSULAR DE ELECCIONES DE PUERTO RICO y PARTIDO UNIÓN REPUBLICANA PROGRESISTA, peticionarios, *v.* CORTE DE DISTRITO DE SAN JUAN, HON. EMILIO S. BELAVAL, JUEZ INTERINO, demandada.

Núm. 9.—*Sometido:* Mayo 31, 1944. *Resuelto:* Junio 21, 1944.

---

820

Hon. Procurador General Interino Jesús A. González y G. Benítez Gautier, Procurador General Auxiliar, abogados de la Junta Insular de Elecciones, peticionaria; Celestino Iriarte, F. Fernández Cuyar, H. González Blanes y M. Cruz Horta, abogados del Partido Unión Republicana Progresista; Emilio S. Belaval, pro se, Juez demandado; Samuel R. Quiñones y Miguel Guerra-Mondragón, abogados de la interventora Luisa Boix.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El 12 de abril de 1944 Luisa Boix Domínguez y otras 2,585 personas radicaron en la Corte de Distrito de San Juan una petición interesando la expedición de un auto perentorio de *mandamus* contra la Junta Insular de Elecciones de Puerto Rico y contra el Superintendente General de Elecciones de Puerto Rico, ordenando, en cuanto a la primera, que inmediatatamente proceda a incluir a los demandantes en el registro de electores, y en lo que al segundo respecta, que en cumplimiento de la sección 27 de la Ley Electoral envíe a las personas que en la aludida sección se especifican, y retenga en el archivo de la Junta, copias de la lista suplementaria que dicho funcionario había ya preparado, conteniendo los nombres de los demandantes y demás datos que deben constar en las listas de votantes. El 14 de abril el Juez señor Massari expidió el auto alternativo, señalándose la vista para el dos de mayo siguiente. Antes de esta última fecha, el juez de la Corte de Distrito de Bayamón, señor Belaval, fué nombrado juez especial de la Corte de Distrito de San Juan en sustitución del señor Massari,[1] y en el referido día dos de mayo comparecieron las partes, presidiendo la corte el Juez señor Belaval. Los demandados radicaron su contestación alegando, entre otras, la defensa de cosa juzgada, y en el mismo acto se llamó a la vista de una moción de intervención que había radicado ese día el Partido Unión Republicana.

Discutida la moción de intervención, fué declarada con lugar el día tres de mayo, permitiéndose la radicación de la contestación que había preparado el interventor en oposición a la petición de mandamus. En esta contestación se levantó

---

[1] El señor Massari, en su carácter de juez de distrito *at large*, venía sustituyendo interinamente al juez en propiedad de la Corte de Distrito de San Juan, señor Jorge L. Córdova, quien se halla en uso de licencia. El juez señor Massari fué trsaladado a una corte de distrito de la Isla, y para reemplazarlo en la Corte de Distrito de San Juan fué designado el juez de distrito de Bayamón, señor Belaval.

también la defensa de cosa juzgada. A petición de todas las partes, la corte les concedió un plazo de tres días para radicar alegatos en relación con la defensa de cosa juzgada, y ordenó que continuase el caso el nueve de mayo a las dos de la tarde. En esa fecha el interventor radicó una moción solicitando que el Juez señor Belaval se inhibiese de conocer del caso y que diese traslado del mismo a los tres jueces restantes de la Corte de Distrito de San Juan para que éstos conociesen del asunto *in banc*. Al empezar la sesión del nueve de mayo, el interventor pidió que se oyese en primer término su moción de inhibición. Se opuso al principio la corte, pero finalmente accedió, declarándola sin lugar, sin permitir al interventor presentar la prueba que insistentemente ofreció en apoyo de la moción. Manifestaron entonces los demandados y el interventor que necesitaban presentar prueba en apoyo de la defensa de cosa juzgada, y con la oposición de los demandantes, la corte lo permitió, siendo entendido, tanto por las partes como por la corte inferior, que esa prueba se presentaba a los únicos efectos de la defensa de cosa juzgada. Después de sometida dicha evidencia y presentados los alegatos discutiendo la defensa de cosa juzgada, en una extensa opinión la corte no sólo consideró la cuestión de cosa juzgada, si que resolvió el caso en sus méritos, dictando el auto perentorio de mandamus. Para revisar la denegación de la moción de inhibición y la de la defensa de cosa juzgada, y la expedición del auto perentorio en las condiciones antedichas, a instancias de la Junta Insular de Elecciones y del Partido Unión Republicana Progresista—como ahora se denomina el Partido Unión Republicana—, expedimos este auto de *certiorari* bajo la Ley núm. 32 de 1943 (pág. 85).

El día señalado para la vista, el Juez recurrido compareció en persona, radicando su contestación así como una moción suplicando a este tribunal que recibiese la evidencia que el Partido Unión Republicana había ofrecido en la corte inferior para sostener su moción de inhibición. Este tribu-

nal, entendiendo que dentro del presente recurso de certiorari carece de jurisdicción para oír evidencia que en primera instancia debió presentarse en la corte inferior, denegó la moción del recurrido.

▆▆▆ Inmediatamente después, Luisa Boix Domínguez et al.—los peticionarios en el pleito de mandamus en la corte inferior—solicitaron permiso para intervenir en este caso, y al serles concedido, presentaron su contestación oponiéndose a las pretensiones de los aquí peticionarios.

En orden lógico, corresponde discutir en primer término si erró o no la corte recurrida al denegar la moción de inhibición, sin antes dar una oportunidad al Partido Unión Republicana para presentar su evidencia.

La moción, sin duda, imputa al Juez señor Belaval parcialidad a favor de los demandantes en el pleito de mandamus. Se expone en ella que el Gobernador Tugwell está actuando como un líder conspicuo del Partido Popular Democrático, al cual pertenecen Luisa Boix Domínguez y los codemandantes en el pleito de mandamus; que el Gobernador está interesado en que el referido pleito sea fallado a favor de los demandantes, y que a ese fin ha verificado innecesarios traslados de jueces, de ese modo logrando designar al Juez señor Belaval, también de afiliación Popular democrática, según se alega, para que continúe y resuelva el pleito de mandamus; que el medio de que se valió el Gobernador para sobornar al Juez señor Belaval fué haciéndole "secretamente ofertas de ascenso en la judicatura, cuyas promesas fueron aceptadas, existiendo actualmente el convenio formal de que de vacar la plaza del señor Jorge Luis Córdova en la Corte de Distrito de San Juan, el Juez señor Belaval será nombrado para ocupar dicho cargo."

El propio Juez señor Belaval interpretó que en la moción de inhibición se le imputaba haber sido sobornado, y así lo consignó en el párrafo "e" de la moción que presentó ante

este tribunal solicitando se oyese la prueba en relación con la inhibición:

"Que con el fin de evitar ulteriores interpretaciones de la opinión pública sobre los hechos envueltos en el alegado soborno que fué aceptado por este Juez a cambio de fallar favorablemente a favor de los peticionarios el procedimiento recurrido, sería conveniente que se ventilara previamente ante este Tribunal Supremo dicho incidente con toda la evidencia necesaria para probar la gravedad del cargo o para exonerar a este Juez de esa imputación."

Y luego, al argumentar oralmente la moción a que acabamos de hacer referencia, manifestó el juez recurrido que cualquier persona que leyera la moción de inhibición tendría que llegar a la misma conclusión a que él llegó, al efecto de que se le imputaba haber sido sobornado.

En el caso de *Peña* v. *García,* 45 D.P.R. 44, 46, 49, 52, se hace un estudio sobre la ley de esta jurisdicción relativa a la parcialidad o prejuicio en los jueces. Se dijo entonces:

"La parcialidad o el prejuicio de parte del juez con respecto a alguno de los litigantes no aparece en el artículo anteriormente citado [art. 23, Código de Enjuiciamiento Civil]. Sin embargo, se advierte claramente el propósito de que el juzgador sea una persona completamente desinteresada, libre de vínculos y relaciones que puedan alterar el equilibrio ecuánime y sereno de la discreción judicial. El artículo 170 del Código de Enjuiciamiento Civil de California contiene un apartado que cubre los casos de parcialidad o prejuicio de parte del juez. Según este apartado, que no ha sido incluído en nuestro artículo 23, cuando de la declaración jurada de una de las partes aparezca que no puede obtener un juicio imparcial y justo ante cualquier juez de la corte que va a juzgar la causa, por razón de prejuicio o parcialidad de dicho juez, éste inmediatamente asegurará los servicios de cualquier otro juez del mismo condado para presidir la vista de dicha acción o procedimiento. Esta declaración jurada debe notificarse a la parte contraria o a su abogado por lo menos con un día de anticipación a la vista del caso, disponiéndose que podrán presentarse contra*affidavits* un día después, a menos que la corte prorrogue el término por un período que no excederá de cinco días.

"Esta es la diferencia que existe entre el artículo 23 de nuestro Código y el 170 del de California. El primero determina los casos en que el juez debe inhibirse, sin hacer mención de las palabras 'parcialidad y prejuicio'; el segundo determina que la parcialidad o el prejuicio obligan al juez a abstenerse de actuar. A pesar de la omisión que se advierte en el artículo 23, no están las partes en Puerto Rico huérfanas de protección contra la parcialidad o prejuicio de un juez. El artículo 83 de nuestro Código de Enjuiciamiento Civil, equivalente al 397 del de California, dispone que:

" 'La corte podrá, previa moción, cambiar el lugar del juicio, en los siguientes casos:

" '     *     *     *     *     *     *     *

" '2. Cuando hubiere motivo para creer que un juicio imparcial no puede celebrarse allí.

" '     *     *     *     *     *     *     *

" '4.. Cuando por cualquier motivo el juez estuviere incapacitado para entender en el asunto.'

"Arguye el demandado que el apartado que autoriza el traslado cuando hubiere motivo para creer que no puede obtenerse un juicio imparcial se refiere a juicios por jurado, y no tiene aplicación en Puerto Rico, porque aquí no hay jurado en casos civiles. Convenimos en que esta disposición tiende a evitar, en los estados de la Unión donde está en vigor, la selección de un jurado en el seno de una comunidad prevenida contra una de las partes, cuando hubiese motivos para creer que no puede asegurarse la celebración de un juicio imparcial, libre de prejuicios y animosidad.

"     *     *     *     *     *     *     *

"La Legislatura Insular, sabiendo que en Puerto Rico no hay juicios por jurado en casos civiles, aprobó el apartado segundo del artículo 83 de la ley procesal. Esta disposición, que se aplica generalmente en los estados de la Unión a la parcialidad o prejuicio de los habitantes de un distrito con derecho a ejercer las funciones de jurados, tiene necesariamente que aplicarse en Puerto Rico a la parcialidad y prejuicio de las personas que han de actuar como jueces, porque aquí no hay juicios por jurado en casos civiles. Cuando se incorporó esta disposición en nuestro código, fué indudablemente con el propósito de que pudiese de algún modo hacerse efectiva. No cabe pensar que el legislador aprobara viciosamente un precepto que, si se descarta a los jueces, no tendría prácticamente aplicación.

"     *     *     *     *     *     *     *

"Nosotros, que no tenemos un precepto constitucional que

requiera expresamente que la justicia se administre sin prejuicio, sostenemos que es éste un principio tan necesario para la administración de justicia, que no puede prescindirse de él sin menoscabo de la propia justicia que los tribunales tienen el deber ineludible de proteger. El apartado segundo del artículo 83 no respondería a ningún fin práctico, si no se aplicase a los jueces. Este apartado debe interpretarse en relación con el apartado cuarto, que autoriza el traslado cuando el juez estuviese incapacitado por cualquier motivo para entender en el asunto.''

Es verdad que el artículo 83 del Código de Enjuiciamiento Civil se refiere al cambio del lugar del juicio, y que en la moción de inhibición no se solicita que el caso sea trasladado a otro distrito. Sin duda no se hizo tal solicitud de traslado porque era innecesaria, toda vez que la Corte de Distrito de San Juan consta de cuatro jueces, y cualquiera de los tres restantes que no se hallase en las condiciones en que se alega se encontraba el juez recurrido, hubiese podido conocer del caso. El hecho de que el interventor solicitase que el caso fuese visto por la corte in banc y que el reglamento de la corte inferior impidiese al juez que estuviese asignado a la sección criminal formar parte del tribunal in banc, no perjudica la moción, porque el juez recurrido tenía discreción para no acceder a que el caso se viese in banc y podía turnar la moción a otro de los jueces, si la prueba en relación con la inhibición requería que el juez recurrido se inhibiese.

La moción de inhibición no fué presentada tardíamente, como alegan el juez recurrido y los aquí interventores. Esa moción no podía ser presentada por quien no fuese parte en el procedimiento, y como el Partido Unión Republicana originalmente no lo era, era preciso obtener previamente el permiso para intervenir, a cuyo efecto acompañó su contestación, de la cual se desprende su interés en el caso para poder intervenir. Fué después de permitida la intervención, y antes de que se presentase la prueba en relación con la defensa de cosa juzgada, que el interventor presentó su moción de inhibición.

█ Tampoco afecta a la suficiencia de la moción el hecho de no haber sido jurada, pues estaba firmada por el abogado del interventor y la firma de un abogado en una moción tiene el efecto legal de un juramento de conformidad con la núm. 11 de las Reglas de Enjuiciamiento Civil.

La necesidad de oír la prueba del interventor se hace más patente por haber tenido lugar en la corte inferior el siguiente incidente:

"La Corte: . . . Ahora bien, frente a esta moción de inhibición, que yo voy a declarar sin lugar de plano, el Juez que preside este Tribunal quiere que en el récord consten los siguientes hechos:

"Sr. González Blanes: ¿Me permite la corte? Si vuestro Honor va a hacer declaraciones sobre hechos que le constan a vuestro Honor, yo deseo que se nos ofrezca a nosotros entonces la oportunidad de traer prueba con respecto a cualquier cuestión de hecho que vuestro Honor desee hacer constar en el récord.

"La Corte: Después que yo haga eso, lo discutiremos. Es bien sabido en Puerto Rico que don Enrique Campos del Toro fué nombrado Procurador General. Es un hecho sabido en Puerto Rico que el Lic. Antonio R. Barceló, Juez de la Corte de Distrito de Guayama, pasará a ocupar el cargo de Primer Procurador General. Tan pronto se supo el nombramiento del señor Enrique Campos del Toro se me llamó a mí a una reunión en casa del Lic. Enrique Campos del Toro, en la cual estuvimos presentes el Lic. Enrique Campos del Toro, el Juez Barceló y yo. En esa reunión se me preguntó si yo creía que representaba un perjuicio para Antonio R. Barceló dejar su puesto de juez y venir a ocupar el puesto de Primer Procurador, porque el Lic. Enrique Campos del Toro había decidido que el Primer Procurador General de Puerto Rico Auxiliar fuera el Juez Barceló. Entonces existía el problema de que al Juez Barceló había que darle unas vacaciones para resolver los casos que él tenía pendientes, para hacerse cargo de la Primera Subprocuraduría General. Allí se discutió quién de los dos podía, si el Juez Massari podía cubrir esa plaza en Guayama, y se llegó a la conclusión de que por ser el Juez *at Large,* era conveniente de que fuera el juez Massari quien cubriera esa plaza, porque ésas son sus obligaciones como Juez de Distrito *at Large.*

"Entonces, al momento de considerar la vacante en San Juan, se me consultó a mí si yo creía que yo podría ser nombrado, de que

era el propósito del Departamento de Justicia considerar mi nombramiento en propiedad, si como se esperaba en aquellos días, el Juez Córdova Díaz sería nombrado Juez del Tribunal Supremo. Tuvimos todas las discusiones. Yo presenté mis argumentos en cuanto a lo que yo tenía que hacer, el tiempo que se me tenía que dar para la nueva combinación. El señor Campos del Toro aquella noche me informó que el Juez Jorge Luis Córdova sería nombrado de un momento a otro, que esa era la impresión que él traía de Washington. Entonces se mandó al Juez Calderón, porque el Juez Calderón, si el Juez Jorge Luis Córdova va a la Corte Suprema y yo vengo a la Corte de Distrito de San Juan, con toda seguridad será el juez en propiedad de Bayamón, y se mandó al Lic. Borinquen Marrero a Guayama, porque con toda seguridad Borinquen Marrero será juez en propiedad de Guayama.

"Claro, ésta fué una conversación informal y el Procurador General puede cambiar este criterio cuando él lo crea conveniente, pero yo he venido aquí bajo la impresión de que si el Juez Jorge Luis Córdova pasa a la Corte Suprema yo inmediatamente recibiré, por lo menos el Attorney General me recomendará para Juez de la Corte de Distrito de San Juan en propiedad.

"Después de esas manifestaciones en el récord, que es lo único que quería hacer constar, la moción me parece simplemente una coacción moral ante los tribunales, cuya coacción moral yo, como Juez, no voy a tolerar, y la voy a declarar sin lugar de plano."

Si el juez estimó conveniente expresar lo que él creyó que era la verdad de lo sucedido, parece altamente injusto y contrario a todo debido procedimiento de ley, que impidiese a la otra parte probar mediante evidencia lo que afirmaba en su moción. A este efecto, es de aplicación lo dicho en el caso de *Pueblo* v. *Gelpí*, 59 D.P.R. 36, 45:

"A los querellados debió concedérseles la oportunidad de probar los hechos alegados en su moción y de resultar estos falsos y maliciosos entonces haberse procedido en su contra de acuerdo con la ley. De ser ciertas las alegaciones contenidas en la moción los demandantes en el pleito tenían derecho a solicitar y obtener la inhibición del juez o traslado del caso."

Dada la gravedad de la imputación que se hizo al juez recurrido, era aconsejable que éste hubiese suplicado a

uno de sus colegas que conociese de la moción de inhibición. Parece conveniente repetir aquí lo dicho por la Corte Suprema de los Estados Unidos, por voz de su Juez Presidente Sr. Taft, en el caso de *Cooke* v. *United States,* 267 U. S. 517, 539:

"Otro aspecto de este caso requiere algún comentario. Es indispensable y de importancia suma el poder de castigar por desacato, que todo juez debe tener y ejercitar en protección de la correcta y ordenada administración de justicia y en el mantenimiento de la autoridad y dignidad de la corte. Pero el ejercicio de esa facultad es muy delicado, y debe actuarse con cautela en evitación de conclusiones arbitrarias u opresivas. Esta precaución es más imperativa cuando la conducta constitutiva del desacato conlleva el elemento de crítica o ataque personal contra el juez. Este debe evitar el más mínimo impulso personal de venganza, pero no debe adoptar una actitud tal que por exceso de lenitud perjudique la autoridad de la corte. *Su sustitución por otro juez evitaría ambas tendencias,* aunque la sustitución no siempre es posible. Desde luego, cuando los actos constitutivos de desacato son manifiestamente agravados por ataque personal contra el juez con el propósito de evitar que conozca del caso por ulteriores razones, no debe permitirse que prospere el plan. Pero atentados de esta índole son raros. Tales casos, sin embargo, presentan cuestiones difíciles para el juez. Todo lo que podemos decir sobre la materia es que cuando las condiciones lo permitan o cuando la dilación no perjudique derechos públicos o privados, *el juez llamado a actuar en un caso de desacato con motivo de un ataque personal a él, sin rehuir el cumplimiento de su deber, puede apropiadamente pedir a uno de sus colegas que ocupe su sitio.* [Citas]. [Bastardillas nuestras]

"El caso ante nos es de tal naturaleza que la controversia entre el juez y las partes había llegado a envolver pasión personal tan marcada, que no permitía que la cuestión fuese considerada judicialmente con la calma e imparcialidad necesarias, según lo demuestran abundantemente los autos del caso. Opinamos, por lo tanto, que cuando este caso vuelva a la corte de distrito, a la cual deberá ser devuelto, el juez que impuso la sentencia debería solicitar del juez presidente del circuito [senior circuit judge] la designación de otro juez para que entienda en la segunda vista del cargo contra el peticionario."

Erró la corte inferior al denegar la moción sin dar al interventor una oportunidad de presentar evidencia.

■ Consideramos ahora la cuestión de si procede o no la defensa de cosa juzgada.

Alegaron como defensa especial los demandados y el Partido Unión Republicana en el pleito de mandamus seguido por Luisa Boix Domínguez *et al.* en la corte de distrito, que las cuestiones suscitadas en dicho pleito fueron resueltas contra los allí demandantes por sentencia final de este Tribunal dictada en el pleito número 396, mandamus, seguido por el Partido Popular Democrático, Luis Muñoz Marín, Samuel R. Quiñones, y David Benjamín Cruz, este último por sí y en representación de unas 85,018 personas más, contra la Junta Insular de Elecciones de Puerto Rico, en el cual, por hallarse esta Corte dividida, se dictó sentencia el 28 de marzo último declarando no haber lugar a la expedición del auto de mandamus solicitado, ante, pág. 296; y que entre este último pleito y el seguido por Luisa Boix Domínguez et al. existe la más perfecta identidad entre las partes y la causa de acción.

Para que pueda interponerse con éxito la defensa de cosa juzgada, es preciso que entre los dos pleitos exista identidad de partes y de causa de acción, y que la sentencia en el pleito anterior haya sido dictada en los méritos por un tribunal con jurisdicción.

El juez de la corte inferior admitió la existencia de identidad de partes. A ese efecto expresó a la página 63 de la opinión que sirvió de base a la expedición del auto perentorio de mandamus:

"Nos inclinamos a opinar con los demandados a (*sic*) que David Benjamín Cruz, como miembro de una clase, representó a los aquí demandantes en el primer recurso ante el Tribunal Supremo de Puerto Rico, y que sería la misma parte de prevalecer la defensa de cosa juzgada."

Volvió a admitirlo expresamente el referido juez en el párrafo tres de la contestación que radicó en este recurso de certiorari; a saber:

"Del hecho correlativo numerado tres de la petición, el juez recurrido acepta lo alegado al principio de dicho hecho, *en el sentido de que parte de las 85,019 peticiones que incluye el procedimiento de mandamus antes referido ante esta corte, radicaron en la Corte de Distrito de San Juan una demanda también de mandamus con alegaciones iguales a los hechos ante este Tribunal e interesando idéntico remedio."* (Bastardillas nuestras.)

También los demandantes en el pleito de mandamus en la corte de distrito, interventores en este procedimiento de certiorari, en el párrafo dos de la contestación que radicaron en este procedimiento, admitieron la identidad de partes al alegar:

"Contestando la alegación tres de dicha demanda de certiorari, la parte interventora admite *que parte de los 85,019 peticionarios que instaron el procedimiento de mandamus ante esta honorable Corte Suprema radicaron en la Corte de Distrito de San Juan una demanda de mandamus interesando idéntico remedio."* (Bastardillas nuestras.)

Concedemos que en lo que respecta a si el pleito de mandamus instado en este Tribunal por David Benjamín Cruz y otros era o no apropiadamente un pleito de clase, existió discrepancia entre la opinión emitida por el Juez Todd, con la cual estuvo conforme el Juez Snyder, y la emitida por el autor de esta opinión, con la cual, en opinión separada, concurrió el Juez Presidente.

Pero debemos tener presente que por no haber concurrido en ninguna de ellas una mayoría de los jueces de este tribunal, dichas opiniones sólo exponen el criterio individual de sus autores, la división de opinión entre los jueces fué la razón para que se dictara la sentencia que desestimó la petición de mandamus, pero los fundamentos no son partes de la sentencia. *Hertz* v. *Woodman,* 218 U. S. 205, 213.  Ha-

bida cuenta de la expresa admisión que de la cuestión han hecho todas las partes, podemos considerar que la identidad de partes ha sido establecida a los efectos de la alegada defensa de cosa juzgada.

Que hubo identidad de causa de acción es incuestionable. Tanto el juez recurrido como los aquí interventores expresamente lo admiten en los transcritos párrafos de sus respectivas contestaciones. Pero si alguna duda abrigásemos quedaría disipada comparando la petición de mandamus de uno y otro pleito.

Es innecesario, por obvio, discutir si este Tribunal Supremo tenía jurisdicción para conocer del pleito de mandamus instado por David Benjamín Cruz et al. Y finalmente, es cuestión fuera de duda que dicho caso de David Benjamín Cruz fué resuelto sobre sus méritos, pues la sentencia no fué dictada por motivo de defecto en las alegaciones, o por falta de jurisdicción, o por cualquiera otro defecto que no afecte los méritos del caso. *Durant* v. *Essex Company*, 74 U. S. 107, 109.

En defecto de estatuto que disponga lo contrario, una sentencia dictada por una corte dividida, pero con jurisdicción, es tan final y concluyente entre las partes o sus causahabientes como cualquier otra dictada por mayoría de sus jueces, y si dicha sentencia es sobre los méritos constituye cosa juzgada en otro pleito entre las mismas partes o sus causahabientes, por la misma causa de acción, ya se inste en el mismo tribunal o en otro inferior. Sin embargo, la sentencia dictada por una corte dividida no constituye autoridad ni establece precedente para casos posteriores sencillamente porque los principios de derecho envueltos en el caso no han sido resueltos por una mayoría del tribunal. *Durant* v. *Essex Company*, 90 Mass. 103; *Durant* v. *Essex Company*, 74 U. S. 107; *Durant* v. *Essex Co.*, 101 U. S. 555; *Kolb* v. *Swann*, 13 Atl. 379; *Lyon* v. *Ingham Circuit Judge*, 37 Mich. 378; *Hertz* v. *Woodman*, supra; *United States* v. *Pink*, 315

U. S. 203, 216. El recurrido y los interventores tratan de distinguir entre la sentencia dictada por una corte dividida en el ejercicio de su jurisdicción apelativa y la dictada por la misma corte en el ejercicio de su jurisdicción original. Parecen admitir que en el primer caso, es decir, cuando la sentencia se dicta en el ejercicio de la jurisdicción apelativa, dicha sentencia constituye cosa juzgada, pero que no tiene ese efecto cuando es dictada en el ejercicio de su jurisdicción original. Esa distinción no está justificada por las autoridades ni por los principios generales de derecho. Los efectos legales que se derivan de una y otra sentencia son exactamente los mismos. Cuando esta corte en el ejercicio de su jurisdicción apelativa pasa sobre una sentencia o resolución de una corte inferior, se requiere acción afirmativa de la mayoría de sus jueces para declarar con lugar el recurso. De igual modo, cuando se recurre a la jurisdicción original de este tribunal, se requiere acción afirmativa de la mayoría de sus jueces para que pueda concederse el remedio solicitado. En uno y otro caso, la sentencia que impera es la dictada por este tribunal, ya confirmando la apelada en el primer caso o denegando el remedio solicitado en el segundo. Véase *Hartman* v. *Greenhow*, 102 U. S. 672.

Es indiscutible que una vez dictada nuestra sentencia declarando sin lugar la petición de mandamus radicada por el Partido Popular Democrático, Luis Muñoz Marín, Samuel R. Quiñones y David Benjamén Cruz, estos mismos peticionarios o cualquiera de ellos no pueden radicar después la misma petición u otra sustancialmente igual en esta corte, contra los mismos demandados, por impedirlo la defensa de cosa juzgada al ser interpuesta por los demandados. Si esa sentencia constituye cosa juzgada ante este Tribunal, ¿por qué no ha de constituirlo, al presentarse después en la corte de distrito el mismo pleito entre las mismas partes?

El caso de *Hertz* v. *Woodman*, supra, invocado por el juez recurrido, sostiene la tesis de los peticionarios en este caso,

834

puesto que lo que en él se resuelve es que bajo los preceder.-
tes de la Corte Suprema de los Estados Unidos, una senten-
cia dictada por una corte dividida que confirma la apelada,
constituye una adjudicación final entre las partes, pero que
como los principios de ley envueltos en la misma no han sido
concurridos por la mayoría de la corte, esa circunstancia im-
pide que el caso pueda ser citado como un precedente para
la determinación de otros análogos, ya en la Corte Suprema
de los Estados Unidos o en cualquier otro tribunal inferior.
El de *Gary Realty Co.* v. *Swinney,* 17 S. W. (2d) 505, tam-
bién citado por el juez recurrido, es manifiestamente erróneo.
En dicho caso se sostiene que el de *State* v. *Trimble,* 247 S.
W. 187, no podía constituir *res judicata* porque en la opi-
nión dictada en el referido caso de *State* v. *Trimble* no con-
curría una mayoría de los miembros de la corte.

Ya hemos visto que una sentencia dictada por una corte
dividida constituye cosa juzgada si reúne los demás requisi-
tos necesarios para poder invocar dicha defensa, es decir,
identidad de partes, identidad de causa de acción, jurisdic-
ción para dictarla y que el caso haya sido resuelto en sus
méritos.   Pero es más, independientemente del - error que
acabamos de apuntar, existe en el citado caso de *Gary Realty
Co.* v. *Swinney,* supra, el error de hecho de estimar que la
sentencia en el caso de *State* v. *Trimble,* supra, fué dictada
por una corte dividida.   Basta examinar la opinión en este
último caso, para darse cuenta de que lo que verdaderamente
ocurrió en dicho caso fué que la corte que lo resolvió se com-
ponía de siete jueces; que dos de ellos concurrieron en la
opinión del ponente, dos estuvieron conformes con el resul-
tado a que llegaron los tres primeros, y los dos restantes
disintieron.   Siendo ello así, se trataba en dicho caso de una
sentencia dictada por cinco jueces contra dos.   El caso de
*State* v. *Trimble,* supra, no puede servir de precedente para
otros análogos donde estuviesen envueltos los mismos prin-
cipios legales, pero indudablemente que puede constituir *res*

*judicata* si entre dicho caso y el que se presente posteriormente existen los requisitos necesarios para poder invocar con éxito dicha defensa.

Los demás casos invocados por el juez de distrito no tienen aplicación al de autos.

Habiendo llegado a la conclusión de que debió prevalecer la defensa de cosa juzgada, es innecesario determinar si dentro de las circunstancias de este caso, y consideradas las alegaciones que para controvertir la petición de mandamus hicieron los demandados y el interventor en la corte inferior, erró o no dicha corte al dictar el auto perentorio de mandamus sin oír evidencia en relación con el caso en su fondo.

El resultado a que acabamos de llegar en relación con la defensa de cosa juzgada, resuelve el caso y hace innecesario que el Juez señor Belaval o cualquiera otro en su lugar pase sobre la moción de inhibición. Pero mucho más que el mero resultado de un pleito está envuelto en el presente caso. Un miembro del foro ha hecho una grave imputación contra un juez, en la cual están complicados otros funcionarios, incluyendo al actual Gobernador de Puerto Rico. Una situación tal no debe pasar inadvertida para este tribunal. Procede su esclarecimiento mediante la debida investigación criminal. Si los hechos contenidos en la moción resultan ciertos, evidentemente el Juez señor Belaval y otros deben recibir su castigo. Por el contrario, si la imputación fué hecha por un miembro del foro sin fundamento alguno para ello, en adición a la acción criminal que pueda establecerse contra él, deberá instarse en esta Corte el procedimiento adecuado para tomar contra él la correspondiente acción disciplinaria.

*Procede por lo expuesto anular el auto perentorio de mandamus y devolver el caso a la corte inferior para que proceda a dictar sentencia declarando sin lugar la petición de mandamus.*